IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JORDAN ESKRIDGE.,

                Plaintiffs,

v.                                                      CIVIL ACTION NO.  2:11-cv-00615

PACIFIC CYCLE, INC., et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court are the Defendant Kun Teng Industry Co., Ltd's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) [Docket 27] and the Plaintiff's Motion to Compel Discovery from Defendant Kun Teng Industry Co., Ltd. [Docket 50].  For the reasons discussed below, the Motion to Dismiss is **GRANTED** and the Motion to Compel Discovery is **DENIED**.

**I.**        **Background**

On or about September 15, 2005, the plaintiff, Jordan Eskridge, was riding a Mongoose XR100 bicycle in Hinton, West Virginia.  As he rode over a speed bump, the front wheel separated from the front forks.  This allegedly caused the plaintiff to fall to the ground, and as a result he suffered physical injuries.  Kun Teng Industry Co., Ltd. ("Kun Teng") is a Taiwanese corporation that manufactured the Quando quick-release hub part on Eskridge's bike.

The plaintiff filed his complaint in the Circuit Court of Kanawha County, West Virginia on July 15, 2011.  The named defendants were Pacific Cycle, Inc., Kun Teng, and Wal-Mart

1

Stores, Inc.[1] The complaint contains three counts for strict liability, negligence, and breach of warranty. On November 29, 2011, the court denied the plaintiff's motion to remand the suit based on untimely removal [Docket 30]. The defendant Kun Teng has filed a motion to dismiss for lack of personal jurisdiction. The plaintiff responded, and there was no reply. Therefore, this motion is now ripe.

## II. Personal Jurisdiction

### a. Legal Standard

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of proving to the district court judge the existence of jurisdiction over the defendant by a preponderance of the evidence." *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). But when the court addresses the jurisdictional question "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis to survive the jurisdictional challenge." *Id.* (citing *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). "Under such circumstances, courts 'must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction.'" *Id.*

For a district court to validly assert personal jurisdiction over a non-resident defendant, two conditions must be satisfied. First, a state long-arm statute must authorize jurisdiction over the non-resident defendant. Second, the court's exercise of personal jurisdiction over the non-resident defendant must "comport with the Due Process Clause." *In re Celotex Corp.*, 124 F.3d 619, 627 (4th Cir. 1997); *Mylan Lab., Inc. v. Akzo, N.V.*, 2 F.3d 56, 59-60 (4th Cir. 1993). "Because the West Virginia long-arm statute is coextensive with the full reach of due process, it

---

[1] By court order [Docket 7], Wal-Mart Stores East, LP was substituted for Wal-Mart Stores, Inc.

is unnecessary in this case to go through the normal two-step formula for determining the existence of personal jurisdiction." *Celotex*, 124 F.3d at 627-28 (internal citations omitted). Consequently, the statutory inquiry merges with the constitutional inquiry, and the court must determine whether exercising personal jurisdiction over the defendant is consistent with the Due Process Clause. *See id.*

"A court's exercise of personal jurisdiction over a non-resident defendant is consistent with the Due Process Clause if the defendant has sufficient 'minimum contacts' with the forum such that requiring the defendant to defend its interests in the forum does not 'offend traditional notions of fair play and substantial justice.'" *In re Celotex*, 124 F.3d 619 at 628 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). There are two approaches to finding jurisdiction over persons outside the state's borders: specific and general jurisdiction. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002). If the suit does not arise out of the defendant's contacts with the state, the defendant must have "continuous and systematic" contacts with the state to confer general jurisdiction. *Id.* at 712. On the other hand, if the defendant's contact with the state is the basis of the suit, then specific jurisdiction applies. *Id.* The Fourth Circuit applies a three-part test to determine whether specific jurisdiction exists: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *Mitrano v. Hawes*, 377 F.3d 402, 407 (4th Cir. 2004). The "touchstone" of the specific jurisdiction analysis is whether the defendant "engaged in some activity purposefully directed toward the forum state." *In re Celotex*, 124 F.3d at 628 (internal quotations omitted).

One variant of specific jurisdiction is the "stream of commerce" theory. *Viasystems, Inc.*

*v. EBM-Papst St. Georgen GMBH & Co., KG*, 646 F.3d 589, 597 (8th Cir. 2011). The stream of commerce theory finds its origin in the U.S. Supreme Court decision *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980). In *World-Wide Volkswagen*, the Court held that an Oklahoma court could not, consistent with the Due Process Clause, exercise jurisdiction over a nonresident automobile retailer and distributor "when the defendants' only connection with Oklahoma is the fact that an automobile sold in New York to New York residents became involved in an accident in Oklahoma." *Id.* at 287, 291. The Court reasoned that foreseeability that a product could cause injury in a state alone is insufficient to confer personal jurisdiction. *Id.* at 297. However, the Court explained that, "[t]he forum State does not exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 297-98.

In *Asahi Metal Industry Co. v. Superior Court of California, Solano County* ("*Asahi*"), 480 U.S. 102 (1987), the U.S. Supreme Court issued a fractured decision outlining competing versions of the stream of commerce theory. *Asahi* arose out of a motorcycle accident, and the driver of the motorcycle filed suit against Cheng Shin Rubber Industrial Co., Ltd. ("Cheng Shin"), the Taiwanese manufacturer of the motorcycle tube. *Id.* at 106. Cheng Shin filed a cross-complaint against Asahi Metal Industry Co. ("Asahi"), the manufacturer of the tube's valve assembly. *Id.* After the plaintiff's claim against Cheng Shin settled, only Cheng Shin's complaint against Asahi remained. *Id.* The Justices unanimously held that exercising jurisdiction over Asahi would offend "traditional notions of fair play and substantial justice," but the Justices disagreed on whether Asahi had sufficient minimum contacts with the forum. *Id.* at 113-14. Justice O'Connor, writing for herself and three other Justices, asserted that "[t]he

placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Id.* at 112. Instead, there must be "an action of the defendant purposefully directed toward the forum State." *Id.* at 112. (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Justice O'Connor then explained:

> Additional conduct of the defendant may indicate an intent or purpose to serve the market in the forum State, for example, designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State. But a defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Id.* Applying this reasoning to Asahi, Justice O'Connor found that exercising personal jurisdiction over the company would violate due process because there was no evidence of any action by Asahi to purposefully avail itself of the California market. *Id.* at 112-13.

In contrast, Justice Brennan, also joined by three Justices, stated that he saw "no need" for a showing of additional conduct directed toward the forum when the defendant is aware that the stream of commerce may or will "sweep the product into the forum State." *Id.* at 116-17. Justice Brennan defined the stream of commerce not as "unpredictable currents or eddies" but as "the regular and anticipated flow of products from manufacture to distribution to retail sale." *Id.* at 117. Justice Brennan found that the facts in *Asahi* were sufficient to establish minimum contacts because Asahi was "aware of the distribution system's operation, and it knew that it would benefit economically from the sale in California of products incorporating its components." *Id.* at 121. Justice Stevens, writing separately and joined by Justices White and Blackmun, first stated that the examination of minimum contacts was unnecessary in light of the Court's determination that exercise of jurisdiction over Asahi would be unreasonable and unfair.

*Id.* at 121.  Justice Stevens also criticized the plurality for assuming that a clear line can be drawn between awareness that a part will reach the forum state and purposeful availment of the forum market.  According to Justice Stevens, whether or not Asahi's conduct constituted purposeful availment required an examination of the volume, value, and hazardous character of the products.  *Id.* at 122.

The Supreme Court returned to the stream of commerce theory last year in *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011).  J. McIntyre Machinery, Ltd. ("J. McIntyre") is an English corporation.  It contracted with an independent U.S. company to sell its machines in the United States.  *Id.* at 2786.  No more than four machines ended up in New Jersey.[2]  *Id.*  Robert Nicastro filed suit in New Jersey state court after he injured his hand while using one of J. McIntyre's machines.  *Id.*  The Supreme Court reversed the New Jersey Supreme Court, which held that due process permitted the exercise jurisdiction over J. McIntyre.  *Id.* at 2785.  Justice Kennedy, writing for Chief Justice Roberts and Justices Scalia and Thomas, explained that when a defendant places its goods in the stream of commerce and they are sold to a person in the forum state, "[t]he principal inquiry . . . is whether the defendant's activities manifest an intention to submit to the power of a sovereign."  *Id.* at 2788.  In other words, "[t]he defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum: as a general rule, it is not enough that the defendant might have predicted that its goods will reach the forum state."  *Id.*  Applying this principle, Justice Kennedy recognized that J. McIntyre directed marketing and sales at the U.S. market, but it did not purposefully avail itself of the New Jersey market.  *Id.* at 2790.  Consequently, he concluded that exercise of personal jurisdiction would violate due process.  *Id.* at 2791.

Justices Breyer and Alito concurred in the judgment.  Justice Breyer noted that none of

---

[2] The Court also notes that the record suggests only one machine ended up in New Jersey.  *Id.*

6

the Court's precedents found that a single, isolated sale of a good in the forum state was constitutionally sufficient to confer personal jurisdiction. *Id.* at 2792. In this instance, there was no regular course of sales to New Jersey, precluding a finding of jurisdiction even under Justice Brennan's stream of commerce theory. *Id.* Therefore, Justice Breyer concluded that the case could be decided based on precedent and without "making broad pronouncements that refashion basic jurisdictional rules." *Id.* at 2793.

In their dissent, Justices Ginsburg, Sotomayor, and Kagan took a more expansive approach to the due process requirements for the exercise of personal jurisdiction. Justice Ginsburg first criticized the plurality, stating that, "the plurality's notion that consent is the animating concept draws no support from controlling decisions of this Court." *Id.* at 2799. Instead, "[t]he modern approach to jurisdiction over corporations and other legal entities, ushered in by *International Shoe*, gave prime place to reason and fairness." *Id.* at 2800. In this instance, J. McIntyre availed itself of the U.S. market nationwide, "not as a market in a single State or a discrete collection of States." *Id.* at 2801. This suit is distinguishable from *Asahi*, Justice Ginsburg explained, because Asahi, unlike J. McIntyre, did not seek out customers in the United States or engage distributors to promote its products in the United States. In addition, Asahi manufactured component-parts, "with little control over the final destination of the products; McIntyre, in contrast, sold finished products." *Id.* at 2803. Consequently, Justice Ginsburg "would hold McIntyre UK answerable in New Jersey for the harm Nicastro suffered at his workplace in that State using McIntyre's shearing machine." *Id.* at 2804.

Because *Nicastro* did not produce a majority opinion adopting either Justice O'Connor's or Justice Brennan's stream of commerce theory, and given Justice Breyer's reliance on current Supreme Court precedent, post-*Asahi* Fourth Circuit case law remains binding. *See Windsor v.*

*Spinner Indus. Co., Ltd.*, --- F. Supp. 2d ---, 2011 WL 5005199, at *5 (D. Md. Dec. 15, 2011) ("This Court . . . construes *McIntyre* as rejecting the foreseeability standard of personal jurisdiction, but otherwise leaving the legal landscape untouched.  The Court will therefore return to this circuit's post-*Asahi* precedents to resolve this case.")  The Fourth Circuit addressed the stream of commerce theory in *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939 (4th Cir. 1994).  In *Lesnick*, the court affirmed the district court's grant of the defendant's motion to dismiss for lack of personal jurisdiction.  *Id.* at 940.  The plaintiff, Beverly Lesnick, brought suit after her husband died from lung cancer.  *Id.*  The defendant, Hollingsworth & Vose, was a Massachusetts corporation that manufactured cigarette filters.  *Id.*  The complaint alleged that Hollingsworth & Vose provided Lorillard, a cigarette manufacturer, with approximately 10 million asbestos-containing filters.  *Id.*  These filters were incorporated into Lorillard's cigarettes and distributed throughout the United States.  *Id.*

The court provided a historical review of personal jurisdiction jurisprudence under states' long-arm jurisdiction.  *Id.*  It reasoned that *International Shoe* expanded the notion of presence but "the standard for imposing jurisdiction over persons outside the state has remained one that depends on a measure of the person's activity in the state coupled with the constraint that the state's exercise of such power would not offend traditional notions of fair play."  *Id.* at 942.  The court maintained that *Asahi* did not alter this principle—"[t]he touchstone of the minimum contacts analysis remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state."  *Id.* at 945.  Thus, the court held that the personal jurisdiction test is whether:

> (1) the defendant has created a substantial connection to the forum state by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state; and (2) the exercise of jurisdiction based on those minimum contacts would not offend traditional notions of fair play and

>substantial justice, taking into account such factors as (a) the burden on the defendant, (b) the interests of the forum state, (c) the plaintiff's interest in obtaining relief, (d) the efficient resolution of controversies as between states, and (e) the shared interests of the several states in furthering fundamental substantive social policies.

*Id.* at 945-46. Applying this test to the facts, the court noted that Hollingsworth & Vose had no presence in Maryland, was not registered to do business there, and made no marketing efforts in the state. *Id.* at 946. Instead, Hollingsworth & Vose manufactured a component part—a cigarette filter. It maintained a filter supply arrangement with Lorillard. *Id.* It then shipped the materials to Lorillard's plants in Kentucky and New Jersey. *Id.* The court found "no affirmative action by Hollingsworth & Vose rising to the level of purposeful availment." *Id.* Therefore, the court concluded that the Maryland courts could not exercise personal jurisdiction over Hollingsworth & Vose. *Id.*

In *Estes v. Midwest Products, Inc.*, I applied the test set forth in *Lesnick* and held that the court had jurisdiction over a defendant who sold its finished products—air tanks—directly to retail chains including Wal-Mart, Target, Auto Zone, and Kmart. 24 F. Supp. 2d 621 (S.D. W. Va. 1998). The defendant in *Lesnick*, I explained, was a component parts manufacturer that "'relinquished' its product into the stream of commerce, wherein a third party made it a part of a separate finished product"; therefore, it did not purposefully direct its activities toward the forum state. *Id.* at 630. In contrast, the defendant in *Estes* manufactured a finished product, and its "intent and purpose [were] completely revealed in its decision to sell through national retail chains." *Id.* I reasoned that, "the defendant structure[d] its primary conduct with genuine assurance that its activities [would] render them liable to suit in West Virginia. It is the difference between shipment and setting adrift." *Id.* Consequently, I concluded that the defendant's sale of finished products to national retailers that have stores in West Virginia

constituted a substantial connection to West Virginia that is purposefully directed toward West Virginia. *Id.*[3]

      *b. Discussion*

To fulfill the first prong of the *Lesnick* test, the court must find that Kun Teng created a substantial connection to West Virginia "by action purposefully directed toward the forum state or otherwise invoking the benefits and protections of the laws of the state." *Id.* at 945. I **FIND** that the first prong cannot be met in the instant dispute and accordingly the plaintiff has failed to make a *prima facie* showing of a sufficient jurisdictional basis.

The complaint recognizes that Kun Teng is not authorized to do business in West Virginia. It asserts, however, that "Kun Teng Industry has conducted and continues to conduct business in West Virginia, including Kanawha County, West Virginia." (Compl. [Docket 1-1] at 11.) Kun Teng submitted an affidavit with its motion to dismiss by Ms. Liu Yu-Ti, Marketing Manager for Kun Teng. The affidavit makes several relevant assertions: (1) Kun Teng does not sell or ship its products to West Virginia; (2) Kun Teng has sold its products to J&B Importers, Inc., located in Miami, Florida, and shipped these products to Los Angeles, California; (3) Kun Teng has never had an office or place of business, or rented or owned property in West Virginia; (4) Kun Teng has never solicited business in West Virginia; (5) Kun Teng has not conducted

---

[3] The plurality decision in *J. McIntyre* states that "the defendant's transmission of goods permits the exercise of jurisdiction only where the defendant can be said to have targeted the forum." 131 S. Ct. 2780 (2011). The U.S. Supreme Court and Fourth Circuit have not had the opportunity to fully explore what factual scenarios amount to the defendant "targeting" the forum. As seen in the *Estes* decision, I believe that a defendant may purposefully avail itself of a state when a defendant sells its finished products to national or regional retailers that have stores in a number of states, including the forum state. In such instances, it may be unnecessary to demonstrate some added state-specific conduct such as advertising the product in the forum state or tailoring the product specifically to comply with regulations of that state. By way of example, if a manufacturer produced its finished products in Kentucky, sold its goods to Retailer-A, which only has stores in West Virginia, and Retailer-A picks up the goods at a warehouse in Kentucky and transports them to West Virginia, I would undoubtedly find that the manufacturer has created a substantial connection to West Virginia by purposefully directing its actions toward the state. I see no reason to require a plaintiff to show any additional conduct directed at West Virginia when the manufacturer sells the same product to Retailer-B, which has stores that will carry the product in West Virginia, along with every other state in the country.

business in West Virginia; (6) Kun Teng has never advertised in West Virginia; (7) Kun Teng does not have any representatives in West Virginia who provide financial, tax, or business advice; (8) Kun Teng does not have a website that has the purpose of directing sales to persons in West Virginia; (9) Kun Teng does not have distribution or sales agreements for products intended to be sold in West Virginia; and (10) Kun Teng has made no sales to any company in West Virginia. (Aff. Supp. Mot. Dismiss [Docket 27-1], at 2-4.)

In response, the plaintiff highlights that the defendant's affidavit does not state: (1) that California is the only state that Kun Teng ships its products to that are purchased by J&B Importers, and (2) that J&B Importers is the only importer and distributor of Kun Teng products in the United States. The plaintiff suggests that there might be other importers in the United States who distribute Kun Teng bicycle parts. The plaintiff also notes that J&B Importers maintains a Mid-Atlantic office that serves states including West Virginia. Therefore, "the company which Kun Teng Industry admits is an importer of Kun Teng Industry products, has a regional location which specifically serves the State of West Virginia." (Pl.'s Resp. Mot. Dismiss [Docket 39], at 8.) The plaintiff represents that it hired an investigator to search bicycle dealers in West Virginia that buy from J&B Importers to determine whether they carry Kun Teng products. In addition, the plaintiff has served interrogatories on Kun Teng to determine the extent of its business conducted in the United States and West Virginia. Kun Teng responded to these interrogatories, but the plaintiff claims that the responses are deficient. Accordingly, the plaintiff has filed a motion to compel.

Although discovery under the Federal Rules of Civil Procedure is broad in scope, district courts maintain discretion to resolve discovery disputes before them. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2002). "[W]here a plaintiff's claim

of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the Court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition." *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988).

In the instant suit, I find that continued jurisdictional discovery would amount to no more than a fishing expedition. Although the defendant's affidavit contains some inconsistencies, it denies all conduct that under Fourth Circuit precedent could be said to have targeted West Virginia. In *Lesnick*, the Fourth Circuit held that personal jurisdiction could not be conferred over Hollingsworth & Vose, even though there was no dispute that it sold millions of its filters to Lorillard, a U.S. cigarette manufacturer, and Lorillard distributed its cigarettes to stores in all fifty states. *Lesnick v. Hollingsworth & Vose Co.*, 35 F.3d 939 (4th Cir. 1994). Likewise, it would be insufficient for the plaintiff to prove that Kun Teng sold its bicycle parts to companies, and that these parts were incorporated into bikes that were eventually sold in West Virginia, even if in large quantities. "Setting adrift" Kun Teng's parts is not enough to show purposeful conduct directed at West Virginia. Moreover, Kun Teng has neither reached out specifically to West Virginia customers nor has it sold finished products to retailers who operate stores in the state. In sum, Kun Teng's affidavit and responses to the interrogatories have eliminated any possibility that its conduct is purposefully directed toward West Virginia such that it has created a substantial connection with the state.

Because the plaintiff in the instant dispute cannot fulfill the first part of the personal jurisdiction test, it is unnecessary to determine whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. *Id.* at 946. Consequently, I **DENY** the

plaintiff's Motion to Compel Discovery and **GRANT** the defendant Kun Teng's Motion to Dismiss.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 27, 2012

_____
Joseph R. Goodwin, Chief Judge