IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JORDAN ESKRIDGE.,

                Plaintiffs,

v.                                              CIVIL ACTION NO.  2:11-cv-00615

PACIFIC CYCLE, INC., et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Defendant Wal-Mart Stores East, LP and Pacific Cycle, Inc.'s Motion for Summary Judgment [Docket 117]. The plaintiff has filed a response, and the defendants have filed a reply. A hearing on this motion was held on December 19, 2012, and the motion is ripe for review. For the reasons discussed below, the defendants' motion for summary judgment is **GRANTED** in its entirety.

**I.    Background**

This case arises out of injuries that the plaintiff, Jordan Eskridge ("Eskridge"), suffered while riding his Mongoose XR100 bicycle (the "bike"), equipped with a Quando quick-release hub (the "quick-release hub"), over a speed bump when he was thirteen years old.

On April 20, 2002, Eskridge's father purchased the bike for Eskridge from a Wal-Mart store in Beckley, West Virginia. The bike was pre-assembled and on display at the store when Eskridge's father purchased it. An owner's manual came with the bike. On September 20, 2005, Eskridge, then thirteen years old, was riding the bike over a speed bump when he fell off the bike. According to Eskridge, he was hospitalized for his injuries, went through surgery, and

1

continues to suffer from the injuries that he suffered from that accident.

On July 15, 2011, Eskridge filed his Complaint in the Circuit Court of Kanawha County, West Virginia against Pacific Cycle, Inc., Kun Teng Industry Co., Ltd., and Wal-Mart Stores, Inc.,[1] alleging strict liability, negligence, breach of warranty, and punitive damages. Eskridge contends that the bike was deficient in:

> [D]esign, manufacture, assembly, testing, and provision with instructions and warnings with respect to: (1) the quick-release hub lacking adequate clamping force; (2) unexpected and premature release of the quick-release hub; (3) inadequate passive retention tabs; (4) lack of positive retention designs; and (5) other defects not yet identified at the time of the filing of the Complaint.

(Pl.'s Resp. to Defs. Wal-Mart Stores E., LP and Pac. Cycle, Inc.'s Mot. for Summ. J. [Docket 119], at 6 [hereinafter Resp.]; *see also* Compl. ¶ 11-12). On September 9, 2011, the defendants removed the case to this court based upon diversity jurisdiction. On November 28, 2011, defendant Kun Teng Industry Co., Ltd. filed a motion to dismiss for lack of personal jurisdiction, which was granted. On November 16, 2012, the remaining defendants filed the instant motion for summary judgment.

## II.     Motion for Summary Judgment – Standard

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

---

[1] Wal-Mart Stores, Inc. was incorrectly identified, and the parties subsequently moved to substitute Wal-Mart Stores East, LP. (*See* Order Granting Joint Mot. to Substitute Wal-Mart Stores East, LP, for Def. Wal-Mart Stores, Inc. [Docket 7]).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

### III. Discussion

Defendants Wal-Mart Stores East, LP and Pacific Cycle, Inc. move for summary judgment on all four claims: (1) strict liability; (2) negligence; (3) breach of warranty; and (4) punitive damages. Because Eskridge relies on the same facts to support all three substantive theories, I will analyze them together.

#### A. *Strict Liability, Negligence, and Breach of Warranty*

The defendants essentially argue that "Plaintiff's own expert agrees that, if the subject bicycle component is used properly, as intended, it is not defective." (Def. Wal-Mart Stores E., LP & Pac. Cycle, Inc.'s Mem. in Supp. of Mot. for Summ. J. [Docket 118], at 6). The defendants also provide the owner's manual which provides instructions and warnings related to the quick-release hub in several different sections. (*Id.* at 6-8). Accordingly, the defendants argue that the

3

plaintiff has not produced any evidence that the bike was defective, that that there was inadequate warning or labeling, or that the defendants had any duty to give "point of sale" instructions for the quick-release component. Eskridge argues that the bike was defective in several different respects:

> (a) The front fork was defective because it was an open fork which offered no benefit to the general public and presented a foreseeable risk, in the event of a reasonably foreseeable improper quick-release hub installation, of separation of the hub from the fork, a crash, and injury to the rider. A better alternative would have been a closed fork.
>
> (b) The front fork and quick-release hub were defective because the quick-release hub reasonably and foreseeably could be, and was in Jordan's case, attached over the top of the passive retention protuberances at the end of the front fork, leading to separation of the quick-release hub from the front wheel, a crash, and injury to Jordan. A better alternative would have been a fork with countersunk dropout faces and larger protuberances to give better feedback that the quick-release had been improperly installed.
>
> (c) The warnings and instructions on the bike, including the owner's manual, were defective because it was reasonably foreseeable that owner's manuals are often not read and, when manuals are read, they are sometimes not understood. . . . Better alternatives included a warning on the quick-release itself directing the rider to consult the detailed information in the owner's manual and point-of-sale training.

(Resp. [Docket 119], at 14).

### i. *Law*

In *Morningstar v. Black & Decker Mfg. Co.*, the Supreme Court of Appeals of West Virginia discussed at length the state's strict product liability laws. 162 W. Va. 857 (1979). The court recognized three categories of product defects: "design defectiveness; structural defectiveness; and use defectiveness arising out of the lack of, or the inadequacy of, warnings, instructions and labels." *Id.* at 888. The court further stated:

> Characteristically, under the first two categories of defectiveness the inquiry centers on the physical condition of the product which renders it unsafe when the product is used in a reasonably intended manner. In the third category of

4

> defectiveness the focus is not so much on a flawed physical condition of the product, as on its unsafeness arising out of the failure to adequately label, instruct or warn.

*Id.* The court concluded that "the general test for establishing strict liability in tort is whether the involved product is defective in the sense that it is not reasonably safe for its intended use." *Id.* "The standard for reasonable safeness is determined not by the particular manufacturer, but by what a reasonably prudent manufacturer's standards should have been at the time the product was made." *Id.*

In *Ilosky v. Michelin Tire Corp.*, the Supreme Court of Appeals of West Virginia further discussed the "use defectiveness" theory of product liability, finding that "[u]se defectiveness covers situations when a product may be safe as designed and manufactured, but which becomes defective because of the failure to warn of dangers which may be present when the product is used in a particular manner." 172 W. Va. 435, 441 (1983). The court emphasized that the "use defectiveness" category involves the manufacturer's "duty to warn of the danger and its potential consequences" and that "[f]or the duty to warn to exist, the use of the product must be foreseeable to the manufacturer or seller." *Id.* "The question of what is an intended use of a product carries with it the concept of *all those uses* a reasonably prudent person might make of the product, having in mind its characteristics, warnings and labels." *Id.* (emphasis in original) (quoting *Morningstar*, 162 W. Va. at 889). Finally, the court held that "[t]he determination of whether a defendant's efforts to warn of a product's dangers are adequate is a jury question." *Id.* at 443.

      **ii.**    *Analysis*

Eskridge's first two theories of the bike's defectiveness focus on use defectiveness. The first defect that he argues is that the front fork "presented a foreseeable risk, *in the event of a*

*reasonably foreseeable improper quick-release hub installation*, of separation . . ." (Resp. [Docket 119], at 14) (emphasis added). The second defect that he argues is that "the quick-release hub *reasonably and foreseeably could be . . . attached over the top of the passive-retention protuberances . . .*" (*Id.*) (emphasis added). As discussed above, use defectiveness is essentially a failure to warn theory. Because Eskridge's third theory of defectiveness is that the warnings and instructions were defective "because it was reasonably foreseeable that owner's manuals are often not read, and when manuals are read, they are sometimes not understood," all three theories of defectiveness alleged by Eskridge are based upon failure to warn. (*Id.*).

A failure to warn theory has two prongs: (1) whether the use of the product was foreseeable to the manufacturer or seller; and (2) whether the manufacturer adequately warned of the danger and its potential consequences. Because the evidence pertaining to the second prong disposes of this motion, I do not reach the issue of whether the use of the product was foreseeable to the defendants. With respect to whether the defendants adequately warned of the danger and its potential consequences, the defendants argue that the owner's manual "goes into great detail regarding the use of the quick-release hub and provides warnings regarding the improper use of the same." (Reply [Docket 120], at 2). Eskridge admits that "[t]he manual describes the proper way in which to install the quick-release front hub, which includes tightening the nut, rather than using the lever as a wing nut, and the [sic] closing the lever." (Resp. [Docket 119], at 3). Eskridge also admits that he "had not read the bike's owner's manual." (*Id.* at 4). Nonetheless, Eskridge argues, based on Green's opinion, that "most bicycle owners do not read their owner's manuals, and even highly educated owners who have read them, don't always understand them."[2] (*Id.* at 9). In sum, Eskridge argues:

---

[2] Eskridge also cites the defendants' expert's testimony that he had worked on unintended quick-release separation cases even where the owner had read the owner's manual. (Resp., Ex. 11 [Docket 119-

6

> (1) that a warning label, similar to those used in the industry since approximately 1984, should have been placed on the quick-release lever to advise riders of the proper method of using a quick-release and the dangers of [sic] posed by a quick-release and (2) that point-of-sale instruction, which has been used by reputable retailers in the industry since the 2000-2001 timeframe, should have been given with respect to the use of the quick release."

(Resp. [Docket 119], at 10). Essentially, the defendants contend that the owner's manual provided adequate warnings, while Eskridge contends more broadly that the warnings and instructions were inadequate because they were *only* contained in the owner's manual. The Supreme Court of Appeals of West Virginia has held that "[t]he determination of whether a defendant's efforts to warn of a product's dangers are adequate is a jury question." *Ilosky*, 172 W. Va. at 443. However, Eskridge has simply provided *no admissible evidence* that the warnings were inadequate. Green merely offered his personal opinion that no one should ever rely upon an owner's manual to give warnings or instructions. (*See* Resp., Ex. 6 [Docket 119-6], at 61-62). This opinion is inadmissible for two reasons. First, Green does not base this opinion on "sufficient facts or data" required for expert opinions to be admissible. FED. R. EVID. 702. Second, while Green may be an expert on bicycle engineering and design, there is no evidence that he is qualified to offer an expert opinion on the standards of the retail industry. *See id.* Therefore, I **FIND** that there is no genuine issue of material fact as to the sufficiency of warnings for the jury to determine that the warnings were inadequate. Accordingly, summary judgment on Eskridge's strict liability claim is **GRANTED** in favor of the defendants. Additionally, because Eskridge's claims of negligence and breach of warranty are based on the same factual basis as his claim of strict liability, summary judgment on both claims are also **GRANTED** in favor of

---

11], at 73, 127). However, this provides no evidence as to whether the owner's manual was inadequate: defendants' expert also testified that he disagreed with Eskridge's assertion that the manual was insufficient to inform the rider of the proper use of the quick-release mechanism. (*Id.* at 73). Indeed, defendants' expert testified that he thought "the manual is accurate, straightforward, easy to understand, and if followed, will lead to a properly installed quick release." (*Id.*).

the defendants. Finally, because all summary judgment has been granted on all substantive theories of liability, summary judgment as to punitive damages is **GRANTED** in favor of the defendants.

**IV.     Conclusion**

For the reasons stated above, the defendants' motion for summary judgment is **GRANTED** in its entirety.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     February 15, 2013

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE